IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:06cv3

| | |
|---|---|
| ELAINE A. MUELLER, individually; JEFFREY A. MUELLER, individually; and TOWN PUBLISHING CO., INC., a North Carolina Corporation )<br><br>Plaintiffs, )<br><br>Vs. )<br><br>TOWNS PUBLISHING, INC., a South Carolina Corporation; JERRY EDWARDS, individually; and STEVE EDWARDS, )<br><br>Defendants. )<br>_____ ) | MEMORANDUM AND RECOMMENDATION |

**THIS MATTER** is before the court in accordance with 28, United States Code, Section 636(b), and on defendants' Motion to Stay Proceedings and Compel Arbitration (#4), which was supported by a Brief In Support (#4). On March 27, 2006, plaintiffs timely filed their Response to Motion to Stay Proceedings and Compel Arbitration (#8). Plaintiffs' reply, if any, to such response was due to be filed not later than April 6, 2006, see L.R. 7.1 (W.D.N.C.), but no reply was submitted. Having considered defendants' motion and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

**FINDINGS AND CONCLUSIONS**

**I.    Nature of the Case**

This matter is before the court based on an assertion of diversity jurisdiction. 28 U.S.C. § 1332. Complaint, at ¶ 6. This action concerns the purchase of a publishing business

in the Henderson County, North Carolina, area, which involved an "Asset Purchase Agreement," a "Consulting Agreement," and a "Promissory note." See Complaint, Exhibits A, B & C. It is undisputed that each of the "agreements" contain an arbitration clause, which defendants contend are broad enough to require arbitration of all claims asserted in this civil action. Plaintiffs contend that such provisions are narrow arbitration agreements, limited to disputes concerning the terms and conditions of those particular agreements, and that the Promissory Note contains no such arbitration agreement, but instead anticipates any type of litigation. Prior to filing their answer, defendants' have moved to stay this action and compel arbitration of all of plaintiffs' claims. Briefing is complete, and defendants' motions are ripe for disposition. L.R. 7.1.

## II. Applicable Law

### A. Federal Law

Federal courts do not hesitate to enforce a bargained-for arbitration agreement. Moses H. Cone Memorial Hosp. V. Mercury Construction Corp., 460 U.S. 1 (1983). Prompt court enforcement of arbitration agreements is the linchpin of Title 9, United States Code, Section 2.

Section 2 of Title 9 governs the effect of a "contractually agreed-upon arbitration provision," but state law prevails on general principles concerning contract formation. Supak & Sons Mfg. Co., Inc. v. Pervel Indus. Inc., 593 F.2d 135 (4th Cir. 1979). In the 20 years since Supak, both the United States Supreme Court and the Court of Appeals for the Fourth Circuit have indicated a strong preference for arbitration:

> Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: "[A] party cannot be required to submit to arbitration any dispute which it has not agreed so to submit." Nevertheless, the Supreme Court has announced its "Healthy regard for the federal policy favoring arbitration" and has explained that the Federal Arbitration Act . . . "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable

issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

American Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 92 (4th Cir. 1996) (*quoting* United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960), and Moses H. Cone Memorial Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24-25 (1983)).

**B.  State Law**

Interpretation of the contract is governed by state law, and federal law requires that ambiguities or doubts in a contract be construed in favor of arbitration. McKee v. Home Buyers Warranty Corp. II, 45 F.3d 981, 984 (5th Cir. 1995). In this case, the two agreements at issue also contain choice of law provision and state that their terms "shall be construed under and governed by the laws of the State of South Carolina." Courts in South Carolina acknowledge that the FAA governs the enforceability of the arbitration provision, but only preempts South Carolina law to the extent that it might invalidate the arbitration agreement itself. Zabrinski v. Bright Acres Assocs., 346 S.C. 580, 594 (2001). South Carolina law favors substance over form, and requires courts to look to the factual allegations underlying a cause of action to determine whether such claim is contemplated by the arbitration agreement. Id., at 597-98. Further, South Carolina makes a distinction between "broad" and "narrow" arbitration agreements, holding as follows:

> The common theme underlying these cases (with broad arbitration clauses) is that the parties expressly agreed that all controversies between them, not just those appurtenant to the contract containing the clause, were to be submitted to arbitration . . . . Where the language of the arbitration clause is not as broad, courts have refused to mandate the arbitration of disputes unrelated to the contract containing the clause.

Vestry & Church Wardens of the Church of the Holy Cross v. Orkin Exterminating Co., Inc., 356 S.C. 202, 208-09 (S.C.App. 2003). Finally, South Carolina courts hold that an intent to

−3−

arbitrate cannot be found based on an *absence* of language evincing an intent to only arbitrate a particular type of dispute, and that only language that is subject to "doubtful interpretation" should be construed in favor of arbitration. Id., at 211. This rule is nearly identical to rules applicable to statutory interpretation, which prevents courts from interpreting and construing language that has a plain meaning.

### III. Arbitration Provisions at Issue

The arbitration provisions at issue in this case, which are contained in the Asset Purchase Agreement and the Consulting Agreement, are identical:

> Should any dispute arise between the parties concerning the terms and conditions of this Agreement or the consummation of the transaction represented hereby, the parties mutually agree to submit such dispute to arbitration . . . .

See Complaint, Exhibits A & C.

### IV. Discussion

As framed by the pleadings of the respective parties, the first issue is whether the arbitration agreements contained in the Asset Purchase Agreement and Consulting Agreement are broad enough to encompass all claims asserted by plaintiffs, the second issue is what claims are covered by the arbitration agreements, and the third issue is whether the remainder of the claims not subject to arbitration should be stayed to avoid piecemeal litigation. Each issue will be discussed *seriatim*.

#### A. First Issue: Broad vs. Narrow Arbitration Agreement

The undersigned has closely read the arbitration agreement and, applying South Carolina law, determined that the language is narrowly tailored. While the agreement starts out broadly by providing that arbitration will apply to "any dispute," such obligation is immediately qualified to include only those disputes "concerning the terms and conditions of this Agreement or the consummation of the transaction represented hereby." Complaint,

Exhibits A & C. Applying South Carolina law as discussed above, it would appear that the parties have agreed to arbitrate a narrow category claims, which would include claims concerning:

(1) the terms and conditions of the Asset Purchase Agreement and Consulting Agreement; and

(2) the consummation of the transaction represented by the Asset Purchase Agreement and Consulting Agreement.

Unlike broad arbitration agreements, there is no broad language in these agreements. See Carolina Care Plan, Inc. v. United HealthCare Services, 357 S.C. 544, 548 (2004). Thus, arbitration must be compelled as to claims related to these contracts, while arbitration cannot be compelled as to any non-contractual claims.

### B. Second Issue: Causes of Action Subject to Arbitration

Plaintiffs concede that their Second Claim (anticipatory breach of contract), Third Claim (breach of contract), and Ninth Claim (breach of implied covenant of good faith and fair dealing) are subject to arbitration. The undersigned agrees as these claims are well within the agreed to language of the arbitration clause.

Equally important is the a sub-issue of the second, which is what claims are not subject to arbitration.

The First Claim is for fraudulent inducement. Plaintiff argues that this claim is not arbitrable because the factual allegations that underlay this claim anteceded the agreements. As discussed above, the arbitration agreement applies to the "terms and conditions" of the agreements and the "consummation" of the transactions represented by the agreements. No matter how similar they may be, events and acts that precede the contractual obligation cannot be considered to be "consummation" of that contract, just as events that may precede

a marriage cannot be considered to be a "consummation" of that marriage.

The Fourth Claim is for anticipatory breach and breach of a <u>promissory note</u>. Clearly, a promissory note is a free standing legal document, separate and apart from the Asset Purchase Agreement and Consulting Agreement. <u>See</u> Complaint, Exhibit B. Further, the language of the Promissory Note makes clear that the parties agreed that as to such instrument, they would have the right "to institute any proceedings upon this note," and could be placed in "the hands of an attorney for collection . . . by legal proceedings of any kind." <u>Id.</u> Further, the undersigned finds that the very nature of a promissory note is that it is, ordinarily, a "negotiable instrument," and that an arbitration provision would limit the negotiability of such paper and its very value, if any. The Fourth Claim is not, therefor, subject to arbitration.

The Fifth Claim is for breach of a verbal contract of employment between defendants and plaintiff Jeffrey A. Mueller.[1] While it appears that the alleged employment agreement was negotiated simultaneously with the Asset Purchase Agreement and the Consulting Agreement, there is no allegation that such oral contract was a term or condition of either written agreement or part of their "consummation." <u>See</u> Complaint, at ¶¶ 63-69. Further, there is no verbal agreement alleged by plaintiffs or defendants to arbitrate disputes concerning Mr. Mueller's employment contract   This claim is not arbitrable.

The Sixth Claim if for unfair and deceptive trade practices, wherein plaintiffs allege that defendants engaged in conduct designed to destroy and injure plaintiffs' business. Clearly, alleged unfair and deceptive practice are neither terms and conditions of the contracts nor "consummation" of the agreements, and is not arbitrable.

---

[1] The undersigned notes that the consulting agreement was between defendants and plaintiff Elaine Mueller concerning her services.

The Seventh Claim for breach of the fiduciary duty of directors to the corporation and the Eighth Claim, which is a shareholder's derivative action, deal with fiduciary and corporate duties that can only arise after the terms and conditions of the agreements have been executed and consummated, that is after the assets have been purchased. Mr. Mueller is asserting such shareholder rights that could have only accrued after the deal was complete. The Seventh and Eighth Claims are, therefore, not arbitrable.

Plaintiffs' Tenth Claim is for negligent and "grossly" negligent infliction of emotion distress. These claims, sounding in tort, are well outside the limits of the arbitration agreements which anticipated contractual violations of the "terms and conditions" as well as consummation of the agreements. Plaintiffs specifically allege that it was the "words, behavior, and actions on or about December 1, 2005" of defendants that caused such harm, which is nearly two years after the agreements were executed. Complaint, at ¶ 100. The Tenth Claim is not arbitrable.

### C. The Third Issue: Whether the Non-Arbitrable Claims Should be Stayed

The third issue is whether the remainder of the claims not subject to arbitration should be stayed to avoid piecemeal litigation. While counsel for the respective parties have done an excellent and commendable job of briefing the substantive issues, they have provided the court with no discussion of this particular issue. Certainly, the court can find no statutory requirement that requires non-arbitrable claims to be stayed; on the other hand, principles of sound judicial management teach that courts should avoid piecemeal litigation. Then Chief Judge Robert D. Potter has provided sound guidance on this particular issue:

> As to the alleged RICO violations, Cherokee is correct in arguing that RICO claims are nonarbitrable. The nonarbitrability of the RICO claim, however, does not justify staying the arbitration pending a determination of the RICO claim. The converse is actually mandated, as "a stay of nonarbitrable claims is normally granted 'as a matter of course,' especially where the arbitrable claims 'permeate' the case and the nonarbitrable claims are weak or peripheral."

Universal Marine Ins. Co., Ltd. v. Beacon Ins. Co., 588 F.Supp. 735, 738 (W.D.N.C.1984) (citations omitted). While there is no doubt that the non-contractual claims that are not subject to arbitration are infinitely more enticing to a litigator than the contractual claims, they are by their very nature much more speculative, and it is the contractual claims that permeate this particular case. In conformity with the reasoning of the district court in Universal Marine, the undersigned will recommend that the nonarbitrable claims be stayed pending completion of arbitration.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1) defendants' Motion to Stay Proceedings and Compel Arbitration (#4) be **GRANTED** as to the Second, Third, and Ninth Causes of Action, and that arbitration be **COMPELLED** as to such causes of action;

(2) defendants' Motion to Stay Proceedings and Compel Arbitration (#4) be **DENIED** as to the First, Fourth, Fifth, Sixth, Seventh, Eight, and Tenth Causes of Action, and that arbitration **NOT** be compelled as to such causes of action; and

(3) that inasmuch as claims remain that are not subject to arbitration, and it appearing that the claims that are subject to arbitration permeate the case, the undersigned respectfully recommends that this civil action be **STAYED** in its entirety pending arbitration and that the court set a deadline for completion of arbitration in order to avoid undue delay and congestion of the docket.

Signed: April 19, 2006

*Dennis L. Howell* (signature)

Dennis L. Howell
United States Magistrate Judge


The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).